174 N.J. Super. 499 (1980)
417 A.2d 46
MARIAN MATLAND, PLAINTIFF,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION AND HAROLD MATLAND, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided April 22, 1980.
*502 Richard Schacter for plaintiff (Schacter, Wohl, Cohn & Tromadore, attorneys).
John R. Scott for defendant United Services Automobile Association.
Susan Hagerty for defendant Harold Matland.
KEEFE, J.S.C.
This action came on for trial before the court without a jury. The issue to be decided is one of first impression in this State. Simply stated the question is whether a husband, as the sole named insured under an automobile liability policy, may delete coverage for a motor vehicle insured under the policy but owned *503 and controlled by his separated spouse. For the reasons stated herein the court finds that the husband's amendment to the policy cancelling coverage for his wife's motor vehicle was void and without legal effect. Plaintiff therefore is entitled to coverage under the policy for liability, collision loss and personal injury protection benefits.
Plaintiff Marian Matland was the owner of a 1974 Pontiac she was operating on January 1, 1978 when it was involved in a motor vehicle accident. This accident resulted in personal injury to plaintiff, property damage to her vehicle and personal injury and property damage to the owner and/or occupant of another vehicle. About three weeks after the accident plaintiff was advised that coverage for her collision loss and personal injury protection benefits was being denied by defendant United Services Automobile Association (hereinafter USAA). Subsequent to that notification a liability suit was filed wherein Marian Matland was a named defendant, and USAA denied coverage in that litigation. As a result of the denial of coverage by USAA this suit was brought. The liability action of Lehman v. Matland and County of Middlesex has been stayed pending determination of coverage in this matter.
Plaintiff had been the registered owner of the 1974 Pontiac for about three years before the accident. She had been insured by USAA under the assigned risk program since 1976. Defendant Harold Matland had been involved in the sale of various kinds of insurance for about 16-17 years and, although not an agent for USAA, had been insured by them for about five years prior to the accident. The evidence indicates, through his testimony, that to be insured by USAA one must be or have been a commissioned officer in the military service. Thus, while he wrote the policy for plaintiff with USAA, he did so only under the assigned risk program.
In September or October 1978 there was a conversation between Mr. and Mrs. Matland in which the subject of Mrs. Matland's insurance was discussed. She contends that her husband suggested that she be placed under his insurance policy in order to save her money. He denies that the change was made at his suggestion. It is his position that Mrs. Matland requested that he place her vehicle under his policy for the purpose of *504 saving money. However, he did admit that he told her it would save her over $500 in premiums. The agreement was that she would pay her proportionate share of the premium on the policy. The resolution of this factual conflict is unimportant to the determination of the issue. Matland testified that he effected the policy change, adding Mrs. Matland's 1974 Pontiac as an insured vehicle to his policy on October 23, 1977.
In accordance with Mr. Matland's request, USAA issued an amended "Declarations" sheet effective as of October 23, 1977, but dated and apparently mailed on December 19, 1977. The declaration sheet is subdivided into six enumerated "items." Item 1 is entitled "Named insured and address." It contained the name of defendant Harold Matland and his address. Item 2 contained the policy period (October 23, 1977 to October 23, 1978) and a "Numerical designation of operators" which provided as follows:

 01 Harold Matland
 Lic. # N.J. M08243150001223
 02 Marian L. Matland
 Lic. # XX 999999

Item 3 contained a description of "owned automobile or trailer" and read in part as follows:

 Veh. Year Trade Name Model
 01 74 Honda Accord
 02 74 Pontiac F/Bird Esp.

Item 5 dealt with coverages as to each vehicle and premium charges as to each vehicle and type of coverage. In the same item the insurer states that one of the reasons for the adjustment of premium is "added operator 02  added veh. 02." To further reflect the amendment, defendant USAA issued two insurance identification cards to plaintiff. One card read, "Marian L. Matland c/o Harold Matland, Lt. U.S.N. Ret., R.D. 2, Tullo Rd., Martinsville, N.J." The second card read simply, "Marian L. Matland, R.D. 2 Tullo Rd., Martinsville, N.J." Both cards referred to the same policy number, the same policy period, and the same 1974 Pontiac.
The policy itself is titled "Family Automobile Policy" and is divided into several parts. In "Part I  Liability" coverage for *505 bodily injury and property damage is provided for "all sums which the insured shall become legally obligated to pay as damages...." An "insured" is defined as "a person or organization described under `Persons Insured.'"
The "Persons Insured" paragraph says in part:
(a) with respect to the owned automobile,
(1) the named insured and any resident of the same household,
(2) any other person using such automobile with permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission....
A "named insured" is defined as "the individual named in Item I of the declarations and also includes his spouse, if a resident of the same household." An "owned automobile" is defined as "a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded."
On November 10, 1977 Mrs. Matland left the marital home. She did not advise Mr. Matland of the location of her new residence at any time before the January 1 accident. However, he did know where she was employed.
On December 12, 1977, Matland called USAA because he was "curious" about coverage for Mrs. Matland since she had left his "household." In addition, he was upset because he had learned through undisclosed sources that she was permitting others to operate her vehicle. As a result of the conversation with a representative of USAA on that date, he contacted USAA on the following day and requested the deletion of Mrs. Matland's vehicle from the policy and also requested that Mrs. Matland be deleted as an operator under the policy.
To confirm the conversation between Matland and USAA, the latter issued a letter addressed only to Matland dated December 13, 1977. The letter stated:
Dear Lt. Matland:
This not will confirm our telephone conversation on December 12, 1977, in which I explained how marital separation affects your automobile insurance.
Our eligibility rules limit us to insuring only those vehicles owned and principally operated by our member, residents of the member's household, or bona fide dependents. Your wife is considered a named insured only as long as she is considered a member of your household.
An estranged wife (and dependent children in her custody), not a member of the named insured's immediate household, is considered only a permissive user. *506 In this capacity she may not lend the car and extend coverage, nor is she covered by your automobile insurance policy when riding in or operating a nonowned vehicle.
Because of the limited protection for Mrs. Matland and since questions about her coverage could arise, you might want to suggest that she obtain insurance in her own name at the earliest possible date. By insuring in her own name she will have protection that we cannot provide a non-member.
Your Association management feels that a car removed from the control of our member because of marital difficulty is no longer a subject for our insurance. We must enforce very rigid requirements as provided for under the Bylaws that preclude our continuing to insure indefinitely a car in the possession of an estranged or former spouse.
In addition, please remember that you, the eligible member, have the right to cancel coverage on the car in your estranged wife's possession at any time. However, this would remove all coverage, including the minimal protection for her as a permissive user. Therefore, we suggest that she make arrangements for replacement insurance immediately.
May we have your prompt cooperation in this matter?
 Sincerely,
 JOYCE FRIEDERICK
 INSURANCE SPECIALIST
 NEW JERSEY UNIT
A copy of this letter was sent by Matland's attorney to Mrs. Matland's attorney under date of December 22, 1977. The attorney's letter of enclosure states in part, "I strongly recommend that you advise Marian Matland to obtain her own car insurance." No mention was made of the fact that Matland, acting upon the information received in the call of December 12, 1977, amended his policy to delete Mrs. Matland as a designated operator and her vehicle as an insured vehicle. She did not receive the letter through her attorney until December 30, 1977, two days before her accident. At that time she was both surprised and confused. She felt that she had her own policy with USAA and claims that her husband had not told her of the switch-over from her assigned risk policy to the family policy. (Parenthetically, it should be noted that no bill was issued for the amended policy before January 1, 1978, so plaintiff would not have been required to make any payments toward the reduced premium before then.)
Subsequently, on January 9, 1978, USAA issued an amended declaration sheet effective December 13, 1977, deleting Mrs. *507 Matland as an operator and her vehicle as an "owned" automobile.
Defendant USAA contends that defendant Matland, as the named insured, had the sole right to delete coverage and amend the policy. It further contends that, since this is not a cancellation initiated by USAA, the notice provisions of N.J.S.A. 17:29C-6 are inapplicable. The policy provision dealing with this topic permits cancellation only by the "insured named in Item 1 of the declarations" or by "the company" under certain specified conditions. Since USAA argues that its conduct and that of the defendant Matland was not a cancellation, it must logically further concede that the provision of the policy dealing with "cancellation" cannot be the source of Matland's alleged right to delete or amend coverage. Therefore, the conduct of the party defendants must constitute "changes" for which paragraph 14 of the "Conditions" section applies. That paragraph in the portion applicable states:
... nor shall the terms of this policy be waived or changed, except by endorsements issued to form a part of this policy, signed by the attorney-in-fact.
The policy does not say, as defendants argue, that defendant Matland had the exclusive authority to delete or amend coverage as to a vehicle not owned by him. The policy is, in fact, silent on this issue and therefore cannot be resolved by interpretation of the insurance contract.
This case is both factually and legally distinguishable from those cases in which the named insured deletes coverage for children operators who are not owners of insured automobiles. In such cases the named insured owns the automobile and is merely indicating to the company that the child has left the household and no longer will be operating the insured vehicle. Thereafter, if the child is involved in an accident while operating a nonowned vehicle, the insurance for the vehicle would apply rather than the parent's policy. Such cases do not require notice to be given to the deleted drivers. However, generally speaking, no harm results to the general public unless the nonowned vehicle is uninsured. See State Farm v. Zurich American Ins. Co., 62 N.J. 155, 170 (1973), and USAA v. Mione, 34 Colo. App. 448, 528 P.2d 420 (Ct.App. 1974).
*508 However, under the facts of this case, the conduct of defendant Matland does not operate simply to effect a choice of coverage (whether it be primary, concurrent or excess), but rather operates to make the vehicle involved uninsured. To allow such an event to occur without notice to the owner of the insured vehicle is contrary to the public policy of this State which can be determined from various statutes and case law.
Clearly the terms of an automobile insurance policy, or accepted practice in accordance therewith, cannot prevail when such terms and/or practice are inconsistent with statutory policy or decisional law. N.J.S.A. 39:6-48. See Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 286 (1974). Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 495-496 (1960).
New Jersey statutory law requires every owner or registered owner of a motor vehicle in this State to maintain motor vehicle liability coverage, under provisions approved by the Commissioner of Insurance. N.J.S.A. 39:6B-1. Failure to do so may result in fine and/or imprisonment and forfeiture of driving privileges. N.J.S.A. 39:6B-2. With respect to this requirement, no automobile liability policy may issue to any motor vehicle registered in this State unless it includes certain minimum coverages for payment of bodily injury, property damage, uninsured motorist coverage and first party coverage. N.J.S.A. 39:6A-3; N.J.S.A. 17:28-1.1; N.J.S.A. 39:6A-4.
Plaintiff was the registered owner of the 1974 Pontiac. Both defendant Matland and defendant USAA knew this. The "Declarations" sheet of the policy indicated that she was the designated operator of the Pontiac and that she was going to use it for work five days a week. In addition, USAA issued two insurance cards in her name. Regulations promulgated by the Commissioner of Insurance require insurance companies to issue insurance identification cards and to place the name of the "name insured" on the front of the card. N.J.A.C. 11:3-6.1 and 6.2. This card is necessary for an operator and owner to prove compliance with N.J.S.A. 39:3-29 and N.J.S.A. 39:6B-1 and 2 when asked to do so by a law enforcement officer or municipal *509 court judge. Clearly, then, under New Jersey statutory law USAA cannot issue a policy to a registered owner without giving that owner all the rights of an insured under New Jersey law.
There is little doubt but that in normal insurance practice plaintiff would have been named on the policy as a coinsured. Indeed, in cases where the owner of a motor vehicle has not been designated as an insured but where the evidence showed an intention to be so insured, the policy issued has been reformed to comply with the intention of the parties. Hartigan v. Norwich Union Ind. Co., 188 Minn. 48, 246 N.W. 477 (Sup. 1933); Doyle v. Allstate Ins. Co., 4 Wis.2d 411, 90 N.W.2d 562 (Sup. 1958); Collins v. State Farm Mut. Ins. Co., 188 So.2d 460 (La. App. 1966). Aside from reformation for mutual mistake, an insurance policy may be reformed for the benefit of a claimant where the conduct of the insuror is issuing the policy amounts to unconscionable conduct. Heake v. Atlantic Cas. Ins. Co., 15 N.J. 475 (1954).
Plaintiff, having been a named insured under an assigned risk policy issued by USAA before, had every right to expect the same privileges under the amended policy issued to her husband. There is no evidence in the case which would indicate that either defendant advised plaintiff of the significance of the change except for a saving of premium. Certainly nothing done by USAA would tend to alert her to the contrary. The actual amendment to defendant Matland's policy designating plaintiff as an operator and adding her vehicle to the policy was not even issued until December 19, 1977, a month after plaintiff separated from her husband. The insurance cards plaintiff received would lead her to correctly conclude, both factually and legally, that she was an insured of USAA. N.J.A.C. 11:3-6.1 and 6.2(b)4.
USAA argues that its regulations and bylaws prevent it from designating other than a retired service person as a named insured. Such regulations are apparently an acceptable exclusionary basis for writing insurance in this State. N.J.A.C. 11:3-8.1(e)4(9). However, where such a carrier undertakes to *510 insure a nonmember's motor vehicle and issues an insurance card to a nonmember indicating that the cardholder is an insured, the insurer should be estopped from asserting its regulations and bylaws as a defense. To hold otherwise would bring about an unconscionable result to plaintiff and, for the reasons stated earlier, a clearly unintended result under the statutory and decisional law of this State. Cases such as Motor Club of America Ins. Co. v. Phillips, supra; Matits v. Nationwide Mut. Ins. Co., supra, and Peraglia v. Jones, 120 N.J. Super. 518 (App. Div. 1972), have reformed insurance policies to conform to statutory policy.
The policy is, therefore, reformed to add plaintiff as an insured as to the vehicle owned by her. As such, her husband may not delete coverage without her consent. Safeco Ins. Co. v. Green, 260 Md. 411, 272 A.2d 383 (Md. 1971). The existence of the marital relationship does not necessarily make one spouse the agent of the other spouse in cancelling insurance or deleting coverage. Kent v. Dairyland Mut. Ins. Co., 177 Neb. 709, 131 N.W.2d 146 (Sup. 1964); State Farm Mut. Auto. Ins. Co. v. Long, 16 Ariz. App. 222, 492 P.2d 718 (Ct.App. 1972). Not only did defendant Matland not have plaintiff's consent to modify the policy, USAA knew that Matland was acting without the knowledge of his wife. USAA's letter of December 13, 1977 is clear proof of this fact.
Quite aside from the foregoing decision to reform the insurance policy as indicated, there is some question whether the policy restriction insuring a spouse only "if a resident of the same household" is violative of New Jersey statutory law.
In 1972 the New Jersey Legislature passed an act known as the New Jersey Automobile Reparation Reform Act. N.J.S.A. 39:6A-1 et seq. The historical note accompanying the legislation is instructive:
This act shall take effect immediately and the required compulsory insurance, personal injury protection coverage benefits, and tort exemption provisions shall be mandatory on and after January 1, 1973.
Compulsory liability insurance requiring every "owner or registered owner" to maintain automobile liability insurance in specified *511 amounts is required in § 3 of the act. Personal injury protection coverage is provided in § 4, and uninsured motorist protection is provided in § 14. There is no doubt that the act constituted a comprehensive automobile insurance plan for this State. The sections of the statute dealing with the various compulsory coverages must be read in pari materia. See Brokenbaugh v. N.J. Manufacturers Ins. Co., 158 N.J. Super. 424 (App.Div. 1978).
The act defines a named insured as "a person or persons identified as the insured in the policy and, if an individual, his or her spouse." N.J.S.A. 39:6A-2(g).
The statute does not require the spouse to be a "resident of the same household." Personal injury protection coverage is afforded to the "named insured ... who sustained bodily injury as a result of an accident involving an automobile...." Any insurance policy inconsistent with the act is modified or reformed to comply with its provisions. It would appear that USAA's policy defining an eligible person for PIP benefits contravenes the statute and must be modified to conform. Plaintiff would, therefore, be entitled to PIP benefits regardless of whether she was a member of defendant Matland's household on the date of the accident. Lumbermans Mut. Cas. Co. v. Carriere, 170 N.J. Super. 437 (Law Div. 1979). A similar result would be dictated if the uninsured motorist coverage was applicable to the case since the provisions of PIP and UMI coverage are to be read in pari materia. Brokenbaugh v. N.J. Manufacturers Ins. Co., supra.
It would seem incongruous, then, to allow the liability insurance provision of the act to arrive at a contrary result simply because the policy contains a more restrictive definition than the statute. If plaintiff would be entitled to PIP benefits in spite of the policy definition of a "named insured" there is no valid reason why she would be denied liability coverage based upon the same policy definition.
Other jurisdictions have found similar definitions too restrictive and have afforded coverage. In Aetna Cas. & Sur. Co. v. *512 Miller, 276 F. Supp. 341 (D.Ct.Kan. 1971), a policy definition identical to the one in question was found violative of the policy found in the Kansas financial responsibility laws. The court said:
To ameliorate the harsh effects of uncompensated automobile accidents, the Kansas Legislature, in 1939, adopted, with a few changes, the Uniform Financial Responsibility Act ...
... As such, it is to the public interest of every user of the highway not to have to proceed at his peril because of a welter of technicalities  whether factual or in law  of the applicability of a particular driver's liability insurance policy.
One of the great shames of American society is the ever-increasing divorce rate and breakup of families which lead to increased crime, social and economic irresponsibility ... If it were necessary as a condition precedent to driving an automobile on a public highway under the protection of the Financial Responsibility law, to examine the martial status of every driver to find out whether he was married, divorced, or separated temporarily from his fireside, bed and spouse, by duty, business, or a family quarrel, no citizen using the highway could ever reasonably expect to be protected by the other motorists' compliance with the state laws requiring the carrying of automobile liability insurance.
This Court does not believe that an insurance company, doing business as a quasi-public institution, can or should be able to avoid liability under ambiguous provisions of a policy  by attempting to require the spouse of the policy owner as an `insured' to remain under the same roof and in the same physical household during the legal existence of a marriage. Neither does this Court believe it is incumbent upon a user of the highways to conduct a `bed check' to see if another motorist is fully and safely insured by the fact that conjugal bliss is present in his home at the time. [at 348]
A result favoring coverage, but for different reasons, was arrived at in another case involving a similar policy definition. Hartford Ins. Group v. Winkler, 89 Nev. 131, 508 P.2d 8 (Sup. 1973). In that case the policy was issued on January 8, 1964, to the husband in his name only. The wife left the marital home in April 1965 and filed for divorce in May 1965. When the policy issued, an insurance card was delivered to the wife. She was involved in an accident on June 25, 1965, while driving a vehicle not covered in the policy. The court held that she was an insured within the meaning of the policy. It found that the wife clearly qualified as an insured on the date the policy issued. The policy was silent as to when the wife had to be a resident of the same household in order to be a named insured. (The policy in this case is also silent on the same issue.) In view of that fact *513 the court concluded that so long as the wife was a resident of the household when the policy issued, she qualified as a named insured and remained as such so long as she was married to the designated insured.
Although other arguments have been advanced by plaintiff in this matter, they need not be passed upon in view of the court's preceding analysis.