190 N.J. Super. 286 (1983)
463 A.2d 369
KURT CLENDANIEL, PLAINTIFF-APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 17, 1981.
Decided April 30, 1982.
Resubmitted January 4, 1983.
Decided June 23, 1983.
*287 Before Judges BOTTER, ANTELL and FURMAN.
Gerald J. Neski, for appellant.
Steedle, Megargee, Youngblood, Franklin & Corcoran, for respondent (John Aleli, on the brief).
Leave to Appeal Granted and Remanded to Appellate Division, 91 N.J. 285 (1982)  Resubmitted January 4, 1983.
The opinion of the court was delivered by BOTTER, P.J.A.D.
We granted leave to appeal from an order entering partial summary judgment in favor of defendant dismissing plaintiff's *288 claim for "additional" personal injury protection (PIP) benefits under N.J.S.A. 39:6A-10 for injuries suffered in an accident on August 20, 1978. The case is governed by the provisions of N.J.S.A. 39:6A-10 as they existed before this section of the "no fault" law, N.J.S.A. 39:6A-1 et seq., was amended in January 1982 by L. 1981, c. 533.[1] The trial judge ruled that, although N.J.S.A. 39:6A-4 provided basic benefits to the named insured and members of his family residing in the same household, N.J.S.A. 39:6A-10 provided additional coverage for the named insured only, as defined in the policy. See N.J.S.A. 39:6A-2(g), discussed below. Since the policy in question designated the named insured, plaintiff's father, and his spouse if resident of the same household, as the only persons insured for additional PIP coverage, the trial judge ruled that additional benefits were not available to plaintiff. In doing so the trial judge relied on DeSimone v. Nationwide Mut. Ins. Co., 149 N.J. Super. 376 (Law Div. 1977). We now overrule the holding in DeSimone and reverse the judgment below.
Plaintiff was seriously injured in a motor vehicle accident in August 1978. Alleging that he was a resident of his father's household, plaintiff brought this action for PIP benefits under an insurance policy issued to his father by defendant. Defendant paid plaintiff's medical expenses but disputed plaintiff's right to income continuation benefits because of his unemployment status, see Gambino v. Royal Globe Ins. Co., 86 N.J. 100 (1981), and also disputed plaintiff's right to additional benefits afforded pursuant to N.J.S.A. 39:6A-10 as it then existed (section 10, L. 1972, c. 70). Plaintiff contends that he was covered for section 10 benefits for various reasons. The only contention *289 that merits consideration[2] is that section 4 (N.J.S.A. 39:6A-4) and section 10 should be read in pari materia and, therefore, the additional PIP benefits endorsement provided by defendant conflicted with section 10 by describing a more limited class of persons entitled to additional benefits than intended by the Legislature.
The problem may be stated simply. Section 4 provides "basic" benefits (medical expense, income continuation, essential services, survivor and funeral expense) without regard to liability or fault for, among others, "the named insured and members of his family residing in his household." N.J.S.A. 39:6A-2(g) defines "Named insured" as "the person or persons identified as the insured in the policy and, if an individual, his or her spouse." Before its amendment in 1982, section 10 required insurers to "make available to the named insured covered under section 4, suitable additional first-party coverage for income continuation benefits, essential service benefits, survivor benefits and funeral expense benefits. Income continuation [benefits] in excess of that provided for in section 4 must be provided ... by insurers to persons for disabilities ... up to an income level of...." (Emphasis added.)[3] Defendant contends that the language of *290 section 10, "shall make available [additional coverage] to the named insured," meant that the only persons to be covered for additional PIP benefits were those who were defined by the act and regulations adopted thereunder as within the term "named insured." This position was adopted in DeSimone, supra. The court in DeSimone held that "the terms of N.J.S.A. 39:6A-10 restrict the additional coverage to the `named insured covered under section 4.'" 149 N.J. Super. at 379. One reason advanced was that the Legislature could easily have used different terms in section 10 if it intended to benefit all "persons covered in section 4." Ibid. The question is whether the Legislature intended by section 10 to restrict benefits to the "named insured" or merely intended to require that the option to obtain additional coverage should be given to the named insured, with whom the insurer has dealings, without changing the category of persons intended to be covered for such benefits.
We have this case because the Legislature did not clearly express itself. Our objective is to determine the Legislature's intent.
To start with we note that N.J.S.A. 39:6A-2(g) includes a spouse of the person or persons identified as "the insured" in the policy, although this definition section does not speak of the spouse's residence in the same household. (By contrast, the policy in question defines the named insured as the individual named in item 1 of the declarations and also that person's spouse if a resident of the same household. It further defines an "insured" as a person or organization described under the policy section entitled "Persons Insured.") Section 4 mandates benefits for (a) "the named insured" and members of his family residing in his household who sustain injury in an automobile accident, (b) other persons occupying the automobile of the named insured or using it with his permission, and (c) pedestrians *291 injured by the named insured's automobile. Section 10 requires insurers to make certain additional benefits "available to the named insured covered under section 4." However, in setting limits for income continuation benefits it refers to the persons entitled to those benefits not as the named insured but as "persons" who become disabled by injuries suffered in the motor vehicle accident.
In our view the first sentence of section 10 did not intend to limit the additional benefits to the named insured. It required the insurer to make the additional coverage available as an option to the named insured because this is the only person with whom the insurer has dealings. The intent to expand benefits for those persons covered in section 4 is found in the second sentence of section 10 dealing with income continuation benefits in which the beneficiaries were referred to as "persons" with disabilities. That sentence required insurers to provide an option for income continuation benefits "in excess of that provided for in section 4 ... to persons for disabilities." By not limiting these additional benefits "to the named insured" who is disabled and by referring to the beneficiaries as persons who are disabled, the Legislature apparently contemplated the same category of covered persons as in section 4. We can discern no good reason why the Legislature would require insurers to make available for purchase additional coverage for the policyholder and his or her spouse without assuring the right to obtain added protection for members of the policyholder's household as well as guest passengers.
The issue cannot be decided by the terms of the policy furnished by defendant. The "additional" PIP endorsement designated as "a Person Insured" for additional PIP coverage the "named insured and his spouse if a resident of the same household." (As noted above, this is narrower than the literal definition of named insured in N.J.S.A. 39:6A-2(g) because it *292 added residence in the same household as a condition.[4]) The insurance policy left a little space so that other persons could be named, but it was unlikely that a layman would know in advance of receiving the endorsement that other names should be added to secure benefits of the same nature afforded to family household members automatically covered by section 4. Nor is it clear why the endorsement left room for naming additional insureds. Perhaps the ambiguity in section 10 was perceived by the policy draftsman and this was the means used to deal with it.
Nor do we think that the persons to be covered can be determined by regulations adopted by the Commissioner of Insurance ("the Commissioner"). Section 10 authorized the Commissioner to establish by regulation the "amounts and terms of income continuation insurance to be provided pursuant to this section." However, the category of persons covered is a matter of statutory definition and intent. The Commissioner was expressly authorized by section 10 to deal with income continuation benefits, in amounts and terms, but section 10 enlarged other benefits as well. Thus, the last sentence could not have intended that the Commissioner should decide by regulation who would be entitled to benefits.
Regulations were adopted dealing with additional PIP benefits. N.J.A.C. 11:3-7.3 and N.J.A.C. 11:3-7.7(a)(3). N.J.A.C. 11:3-7.3 was quoted in full in Justice Schrieber's concurring opinion in Muschette v. The Gateway Ins. Co., 76 N.J. 560, 568 (1978). N.J.A.C. 11:3-7.7 contained Appendix A which prescribed the minimum schedule of additional PIP benefits that *293 must be made available. It contained five options for different levels of benefits. N.J.A.C. 11:3-7.3(d) also required benefits in excess of those in Appendix A to be "made available at the option of the named insured...." See Muschette v. The Gateway Ins. Co., supra, 76 N.J. at 564, where the court speaks of additional coverage to be made available to policyholders. This is consistent with our view that the first sentence in section 10 did not restrict the persons to be benefited but simply required insurers to give the policyholder an option to purchase additional benefits. It is in this sense that section 10 required additional coverage to be "made available to the named insured." Thus, we conclude that the provision in Notes to Table, following Appendix A, which stated that the above schedules are "applicable to named insured as defined,"[5] could not limit the categories of beneficiaries within the intended scope of section 10. The statutory intent will prevail over any inconsistent policy provision and regulation, Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 286 (1974), although the Commissioner's interpretation of the statute deserves consideration. Ibid.
Before the remand to us by the Supreme Court, which we discuss below, the parties furnished us no legislative history on the issue. Our own examination of the public hearings and the N.J. Automobile Insurance Study Commission Report[6] leading to the adoption of the New Jersey Automobile Reparation Reform Act, the no-fault law, L. 1972, c. 70, revealed no explicit statement as to the categories of persons intended to be covered by section 10. The statement appended to 1972 Assembly Bill No. 667, which became L. 1972, c. 70, mentioned the basic PIP *294 benefits and stated: "The insured may purchase additional coverage if desired." The Report of the Study Commission[7] contained a summary of the Commission's recommendations. The summary referred to the basic PIP benefits to be provided and made no mention of optional additional benefits. The persons covered were described as the named insured and members of his household, authorized drivers and guest passengers in the insured's car and pedestrians struck by the car.
In hearings before the Study Commission, Professor Robert E. Keeton supplemented his testimony with a written statement in which he described guidelines recommended in the United States Department of Transportation Study which allowed insurers to offer additional coverage above basic limits for accident victims.[8] Other references to the purchase of additional coverage were made at the Study Commission's hearings. The availability of "increased limits (over Basic Protection)" was recommended in a report of the auto study committee of the Independent Mutual Insurance Agents (N.Y., N.J. and Conn.).[9] The statement of R.C. Chilcott, Vice President, Family Insurance, Nationwide Insurance Companies, included a proposed plan with basic compulsory coverage and higher limits "for extended disability income and for survivors' benefits" to be "made available for those who desire to purchase it."[10] No distinction was made as to the class of persons to be covered. In his testimony Chilcott made it clear that the limits on basic benefits were designed to keep costs down, but that additional protection *295 should be made available at an extra cost.[11] In a report submitted by the South Jersey Claims Men's Association, "drastic changes" in the existing system were opposed. Instead, it was recommended that the then available first-party coverage for loss of income to the named insured should be increased in limits, with coverage at a reduced level for an injured and disabled spouse of the named insured.[12] Since this proposal was rejected and was not directed to the issue before us we can infer that this recommendation did not influence the choice of language in section 10. Our conclusion is that the history of this legislation discloses no intention to limit additional coverage under section 10 to the "named insured."
Mario A. Iavicoli, who was counsel to the Automobile Insurance Study Commission, has criticized the restrictive coverage offered by insurers under section 10, saying the limitation of coverage to the named insured and family members in his household contravenes the intent of the Legislature. Iavicoli, No Fault & Comparative Negligence in New Jersey, § 5 at 29-30 (1973).[13] He states:
Insurance carriers have been writing their Additional Personal Injury Protection Endorsement to cover only the named insured and members of his family residing in his household, thereby excluding all other occupants and pedestrians from additional personal injury coverage. Such was not the intent of the legislation, nor does the Act permit the insurance companies to exclude such occupants and pedestrians from the additional coverage. The Act provides that insurers shall make available to the named insured suitable additional personal *296 injury protection coverage. [N.J.S.A. 39:6A-10]. The insurance carriers interpret that to mean that they need only insured the named insured and relatives within the household with additional personal injury protection coverage. The Act indicates that the additional coverage shall be made available to the named insured because one cannot realistically compel that such additional first party coverage be made available for purchase to occupants and pedestrians. The `make available' language mandates the availability of such coverage for voluntary purchase by the named insured; it is not intended to restrict coverage so as to deny occupants and pedestrians such additional coverage. Those categories of people who are to be covered by personal injury protection coverage are clearly specified in N.J.S.A. 39:6A-4. The additional personal injury protection coverage language found in N.J.S.A. 39:6A-10 was intended only to compel insurers to make available for purchase additional personal injury protection coverage which would increase the limits of the basic coverage insuring the same categories of people specified in N.J.S.A. 39:6A-4. [Ibid.]
Iavicoli's comments reinforce the conclusion we have reached in examining the language of the act, its legislative history and the purpose of the legislation. This conclusion is consistent with the legislative intent to afford a remedy "to all injured for all of their losses." Gambino v. Royal Globe Ins. Co., supra, 86 N.J. at 107. The act must be "liberally construed" to effectuate its purposes. N.J.S.A. 39:6A-16; Gambino v. Royal Globe Ins. Co., supra, 86 N.J. at 108. As noted in Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90 (1981), "PIP coverage should be given the broadest application consistent with the statutory language."
The foregoing analysis does not take into account the amendment to section 10 enacted by L. 1981, c. 533 on January 12, 1982. The pendency of this legislation was not called to our attention when we first considered this appeal, and it was not discovered in our own search for legislative history. However, the Supreme Court granted leave to appeal and summarily remanded the case to us for reconsideration in the light of L. 1981, c. 533.[14] The parties submitted supplemental briefs, and new counsel for plaintiff was substituted. Our reconsideration of the matter with the benefit of the amendatory legislation and its legislative history leads us to the same conclusion, namely, that the categories *297 of covered persons contemplated by section 10 in its original form were the same as those designated by section 4 who were entitled to PIP benefits.
The amendatory legislation requires insurers to give the named insured the "option" to obtain additional first party coverage (for income continuation benefits, essential services benefits, death benefits[15] and funeral expense benefits) for "resident relatives" in his household as well as himself. The statement attached to the bill, A-1853, noted in part:
While section 4 benefits are applicable to the named insured and the members of his family, the statutory language of section 10 is unclear with respect to the applicability of the section 10 benefits to members of the household as well as the named insured.[16] [Emphasis added.]
The effect of L. 1981, c. 533 is to make clear that the additional coverage under section 10 applies not only to the named insured but also to relatives in his household at his option. The amendment is consistent with the original legislative intent as we view it, that the expanded coverage provided by section 10 was not limited to the named insured, but included other persons specified by section 4. While the new legislation does not include unrelated occupants of, and pedestrians injured by, the named insured's automobile, it is consistent with our view that section 10 in its original form intended to benefit other persons as well as the named insured. This interpretation comports with appropriate canons of statutory construction. It reflects the internal sense of the law as we perceive it, considering the nature of the subject matter and pertinent sections viewed in pari materia. See Loboda v. Clark Tp., 40 N.J. 424, 435 (1963).
*298 Defendant argues that the amendment makes clear that the class covered in section 10 was always narrower than the section 4 class. We disagree. The new law follows our interpretation that section 10 was intended to require insurance companies to make additional coverage "available" as an option and that, since the option could only be offered to the named insured, that term did not describe the class of covered persons. The amendment uses the term "at his option" in relation to coverage for "resident relatives in the household of the named insured." But the additional coverage to be "made available" to the named insured himself was always meant to be optional coverage. Now the Legislature seems to have added the right of the named insured to elect to cover himself alone or himself and family members of his household. This is consistent with our view that the Legislature never meant to limit coverage to the named insured alone. On the other hand, excluding from additional coverage pedestrians and occupants of the vehicle other than relatives residing in the named insured's household does narrow the class and is inconsistent with section 4. Thus, we conclude, the Legislature did more than clarify the law. Section 10 no longer borrows the entire class of beneficiaries from section 4, nor does it limit coverage to named insureds only, as defendant contends section 10 originally intended.
Defendant insurer points out that additional coverage increases the cost to the insured. This supports our interpretation, since it should be left to the insured to purchase additional insurance if he wants it. The purpose of section 10, then and now, is to compel insurers to make that coverage available. We do not suggest that a policyholder should not have to pay extra for additional coverage.
But, defendant argues, the Legislature never intended to make additional first-party coverage available for guest occupants and pedestrians because, defendant's brief says, "it is apparent that a purchaser of a policy would have no interest in obtaining additional benefits for strangers," but only for "residents of his household." This is an untenable argument at *299 variance with the legislative scheme. It was answered by the Legislature in section 4 where the class entitled to PIP benefits includes pedestrians injured by the insured vehicle as well as occupants and authorized operators of the named insured's vehicle. We have no doubt that some policyholders would want additional coverage for friends and relatives who ride in the insured automobile but are not household members. Nor are pedestrians injured by policyholders' vehicles beyond the likely range of their concern. Unfortunately, the statement attached to A-1853 was misleading. It referred to the class covered by section 4 as the "named insured and members of his family" and then explained that the new law was intended to clarify section 10 by making sure that the additional benefits would be extended to the same class. Pedestrians and other occupants of the vehicle were not mentioned in the statement. Therefore, it was not apparent from the statement that some members of the class designated in section 4 would be excluded from optional additional coverage. This may have been an oversight, and we respectfully suggest that the Legislature consider this issue again. In our opinion the original intent of section 10 was to embrace within the scope of additional coverage the entire class of persons covered by section 4.
We recognize that section 10 refers to the additional optional insurance as "first party coverage." Section 11 also refers to section 10 benefits as "first party coverage." This term normally signifies "a promise by the insurance company to pay its own insured ... like collision, comprehensive, medical payments or personal injury protection, and not `third party coverage' [a promise to its insured to pay some third party] such as personal injury or property damage liability insurance." Reese v. State Farm Mut. Auto. Ins. Co., 285 Md. 548, 552, 403 A.2d 1229, 1231-1232 (Ct.App. 1979); see Garden State Fire & Casualty Co. v. Commercial Union Ins. Co., 176 N.J. Super. 301, 304-305 (App.Div. 1980). To the extent that PIP coverage is commonly regarded as first party coverage it has broadened the sense of the term to include the right of occupants of the insured's *300 vehicle, injured pedestrians, and resident members of the insured's household, as well as the named insured, to make a direct claim for payment against the named insured's carrier, regardless of fault. See Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 449 (App.Div.), certif. den. 88 N.J. 489 (1981). Thus, because of the broad meaning given to the term "first party coverage" in reference to PIP benefits under the no-fault law, the use of that term in connection with section 10 benefits is not inconsistent with our holding in this case.
This disposition makes it unnecessary to consider other contentions advanced by appellant.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] Section 3 of L. 1981, c. 533 provided that the amendment was to apply prospectively to all policies issued, delivered or renewed on or after 90 days from the date on which the Commissioner of Insurance prescribes a form pertaining to the offer of additional coverage. Except for the discussion of the amendatory legislation, all references in this opinion are to the form of section 10 (N.J.S.A. 39:6A-10) prior to this amendment.
[2] One of the reasons advanced is that the policy is conspicuously designated a "Family Automobile Policy" and to deny such benefits constitutes deceptive and unconscionable practices proscribed by the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. A similar contention was properly rejected in DeSimone v. Nationwide Mut. Ins. Co., 149 N.J. Super. 376, 380-381 (Law Div. 1977).
[3] Before the 1982 amendment, N.J.S.A. 39:6A-10 provided in full as follows:

Insurers shall make available to the named insured covered under section 4, suitable additional first-party coverage for income continuation benefits, essential services benefits, survivor benefits and funeral expense benefits. Income continuation in excess of that provided for in section 4 must be provided as an option by insurers to persons for disabilities, as long as the disability persists, up to an income level of $35,000.00 per year, with the excess between $5,200.00 and the amount of coverage contracted for to be written on the basis of 75% of said difference. The Commissioner of Insurance is hereby authorized and empowered to establish, by rule or regulations, the amounts and terms of income continuation insurance to be provided pursuant to this section.
[4] Matland v. United Services Auto. Ass'n, 174 N.J. Super. 499 (Law Div. 1980) was a case in which the named insured was separated from his wife. The court held that N.J.S.A. 39:6A-2(g) does not require a spouse to reside in the named insured's household as a condition of coverage and that any insurance policy inconsistent with the act would be modified and reformed to comply therewith. Id. at 511.
[5] N.J.A.C. 11:3-7.1 defines "named insured" as the person or persons or organization named in the declaration of the policy, including the spouse of a named individual if resident of the same household. As to the residence requirement for a spouse, see note 4, supra.
[6] "Reparation Reform for New Jersey Motorists," Report to the Governor and the Legislature (1971).
[7] Note 6, supra, Report at p. x.
[8] Public Hearing of April 14, 1971 before Commission to Study Certain Automobile Insurance Matters, Including a "No Fault" Auto Accident Insurance Plan [Created under Joint Resolution No. 4 of 1970], at 148.
[9] See note 8, supra, Public Hearing of March 30, 1971, at p. 134A. See also id. at p. 135A.
[10] See note 8, supra, Public Hearing of April 30, 1971, at p. 85.
[11] Id. at p. 61. It is possible that the limits established for basic benefits in section 4 were kept low in order to obtain attractive premium levels for the new no-fault insurance program. This strengthens the view that the Legislature expected that all classes of persons entitled to basic benefits would be covered by the higher limits made available pursuant to section 10 at an additional cost to the policyholder.
[12] See note 8, supra, Public Hearing of March 30, 1971, at pp. 152, 154-155.
[13] Unexpectedly, these comments are found in section 5, dealing with occupants and pedestrians, but are not mentioned in sections 20, 22 and 24 which deal with additional coverage for the various loss categories. Iavicoli, No Fault & Comparative Negligence in New Jersey at 57, 63 and 67 (1973).
[14] As a result, our first opinion was withdrawn from publication. See 184 N.J. Super. 331.
[15] "Death" benefits was the term substituted for "survivor" benefits. Cf. N.J.S.A. 39:6A-4(d).
[16] By oversight or otherwise, the statement and the amendment overlooked nonrelatives who may be occupants of the named insured's automobile as well as pedestrians injured by his automobile. The result is to restrict section 10 coverage as compared with section 4 coverage.