MARCEL L. LeROUX v. JAMES EDMUNDSON.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, GARNISHEE.

148 N. W. (2d) 812.

February 24, 1967—No. 40,134.

*Miley, Nord & Webster, David W. Nord,* and *Thomas J. Burke,* for appellant.

*Murnane, Murnane, Battis & deLambert* and *John R. deLambert,* for respondent.

ROGOSHESKE, JUSTICE.

Appeal from a judgment entered against the plaintiff, Marcel L. LeRoux, and in favor of the garnishee, State Farm Mutual Automobile Insurance Company.

The issue presented arises out of an accident involving two automobiles, one driven by Marcel LeRoux and the other driven by James Edmundson, the insured of State Farm Mutual Automobile Insurance Company.

Riding in the Edmundson automobile were two children, Cheryl and Sandra Ellsworth, when the accident occurred while Edmundson was taking a friend of Sandra's home. The children sustained personal injuries and each brought an action against both drivers. A consent judgment was entered against both drivers in the amount of $8,500 for both cases. LeRoux paid that judgment in full, then sued James Edmundson for contribution. A jury found that LeRoux was entitled to contribution of $4,250 from Edmundson. Thereafter, evidence was submitted for determination by the court of State Farm's liability to plaintiff under its liability policy issued to Edmundson. Upon findings adverse to plaintiff, the court dismissed plaintiff's garnishment action. We affirm.

The insurance contract between State Farm and Edmundson contained the following provision:

"This insurance does not apply under:

"(g) coverage A * * * to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."

State Farm defended on the ground that Cheryl and Sandra Ellsworth came within this provision and thus were excluded from coverage. It was agreed between the parties that the insured and the two injured girls resided in the same household. In order to determine whether the girls were also "member[s] of the family" of James Edmundson at the time of the accident, testimony was taken concerning the rather unusual circumstances then existing in the Edmundson household.

Elaine and James Edmundson were married on September 21, 1957. Prior to the marriage, Elaine had been living with Clarence Ellsworth, whom she has never married. During this period Ellsworth was married to another woman and not divorced. At the time of her marriage to Edmundson, Elaine was the mother of six children, including Cheryl and Sandra, all of whom were born out of wedlock, the paternity of all being acknowledged by Ellsworth. Sandra, who was 10 at the time of the accident, is the second oldest of the children and Cheryl, who was about 3, is the youngest. After their marriage in 1957, Elaine and Edmundson lived together with the six children in one household, first for approximately 2 years in St. Paul (during which two children of their marriage were born) and thereafter in White Bear in homes they were purchasing as joint tenants.

Although divorced at the time of the trial in November 1964, Elaine and Edmundson and the eight children were living together in White Bear on September 17, 1960, the date of the accident. During the years of their marriage, James Edmundson was regularly employed and gave all except $15 of his $85 weekly earnings to Elaine each payday. She paid nearly all the bills and ran the household. Elaine testified that Ellsworth also made regular payments to her for support of the children. He apparently contributed about as much as Edmundson and also oc-

casionally bought clothes for the children. Ellsworth was a frequent visitor in the Edmundson household, visiting at least once a week and oftentimes every other day. He was on friendly terms with Edmundson, helping him remodel the kitchen and basement and make other repairs to the White Bear home. Edmundson exercised some discipline over all of the children, but major disciplinary problems were handled by Elaine and, at times, by Ellsworth. Edmundson took the entire family on vacations, and both men often took the children for rides. The Ellsworth children continued to use his surname and regarded and referred to him as their father. They regarded Edmundson more as an uncle than a father, addressing him as "Jim" or "Uncle Jim."

Since the parties have agreed that Sandra and Cheryl were residing in the same household as James Edmundson, the only issue on this appeal is whether the girls were members of his family within the contemplation of the parties to the insurance contract.

Words used in an insurance contract, as in any other contract, are to be given the natural and ordinary meaning which they convey to the popular mind. Where there is ambiguity, any doubt as to the meaning must be resolved favorably to the insured. Simon v. Milwaukee Auto. Mutual Ins. Co. 262 Minn. 378, 115 N. W. (2d) 40.

The word "family" has many different common meanings and perhaps as many legal definitions as there are fields of law in which it is used. There is no need for us to go into these variant meanings as that was done exhaustively in Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108. In that case, where the scope of an identical family exclusionary clause was considered, we emphasized that the meaning necessarily depends upon the field of law in which the word is used, the purpose intended to be accomplished by its use, and the facts and circumstances of each case. We cautioned that there was danger in attempting (239 Minn. 263, 58 N. W. [2d] 862, 50 A. L. R. [2d] 117) —

"* * * to apply a definition of the word 'family' to a case involving an entirely different situation from the one in the case in which it has been defined without regard to the purpose intended to be accomplished by the sentence or clause in which the word is used."

In the Tomlyanovich case the insured and the injured party were adult brothers living in their parents' home. In holding that the injured brother was a "member of the family of the insured residing in the same household" even though the insured brother was not the head of that family, we observed that the words "family" and "household" were generally synonymous in indemnity insurance contracts and said (239 Minn. 265, 58 N. W. [2d] 864, 50 A. L. R. [2d] 118):

"Here, the word 'family' is used in a clause restricting the liability of an indemnity insurer in an automobile policy. Its obvious purpose is to exempt the insurer from liability to one who would naturally and inevitably be partial to another because of the close filial ties which exist between members of the same family circle living in the same household. The same reasons exist for restricting its liability to those not members of such family circle whether the injured party is the head of the household, a child or spouse of the head, or simply a member of it. Under these circumstances, the words used should be given that meaning which they ordinarily would have in order to effectuate the obvious purpose intended by the exclusionary clause."

Under the facts disclosed by the evidence, it is apparent that Edmundson, his wife, and the eight children lived together as a family group. The six children were members of the mother's family and her household. When she married Edmundson, her children, no less than herself or the two children born after their marriage, became a part of his household and his family. His contributions in money and services were to the family as a group. There is no evidence of any significant difference in his care and treatment of his stepchildren and his own children. Rather, the intimacy, helpfulness, and concern of each member of the household toward each other, characteristic of the relationship between parents and their natural children, existed during the period they lived together. Although the Ellsworth children did not refer to Edmundson as their father, the group formed a family circle, and there is no reason to believe that Edmundson's resistance to a claim by his stepchildren would differ from a claim made by the children of his marriage to Elaine. Under the circumstances, the Ellsworth children, although illegitimate, were Edmundson's

stepchildren. No cases have been found which apply this exclusion to stepchildren.[1] Attaching primary importance to the factor of a close domestic relationship, other courts have held that blood relationship is not a necessary factor. Thus, an insured's sister-in-law who, with her husband, resided with the latter's parents and the insured, Third Nat. Bank v. State Farm Mutual Auto. Ins. Co. (Ky.) 334 S. W. (2d) 261; a woman who had lived adulterously with the insured for 6 years, Hunter v. Southern Farm Bureau Cas. Ins. Co. 241 S. C. 446, 129 S. E. (2d) 59; and a mother-in-law living with her daughter and son-in-law, the insured, Perry v. Southern Farm Bureau Cas. Ins. Co. 251 Miss. 544, 170 So. (2d) 628, were all held to be members of the insured's family.

There can be little doubt that in this case the stepfather and his stepchildren lived in a close family relationship which would cause the stepfather to naturally and inevitably be partial to his stepchildren. Under the circumstances, we conclude that the trial court correctly held that the stepchildren were within the excluded class.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

----

[1] Under different circumstances, it has been held that stepchildren are members of their stepfather's family. Anderson v. Royal League, 130 Minn. 416, 153 N. W. 853; Tepper v. Supreme Council of Royal Arcanum, 61 N. J. Eq. 638, 47 A. 460.