NATHAN JAMES, AN INFANT BY HIS GUARDIAN AD LITEM, LENDIA ROBERTSON, AND LENDIA ROBERTSON, INDIVIDUALLY, PLAINTIFFS, v. ALLSTATE INSURANCE CO., DEFENDANT-APPELLANT, AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1985—Decided April 29, 1985.

300

Before Judges PRESSLER, BRODY and COHEN.

*Richard P. Maggi* argued the cause for appellant (*McDermott, McGee & Ruprecht,* attorneys; *Richard M. Tango* and *Richard P. Maggi,* of counsel and on the brief).

*Vincent A. Vitiello* argued the cause for respondent (*Vitiello & Seltzer,* attorneys; *Kenneth A. Seltzer,* of counsel and on the brief).

*Jack L. Cohen,* for plaintiffs, submitted a Letter of Non-Participation.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This is an appeal from a judgment entered in a declaratory judgment action brought on behalf of the infant plaintiff to adjudicate the respective liability of two automobile liability insurers to afford him personal injury protection benefits (PIP) for injuries he sustained when, as a pedestrian, he was struck by an insured automobile.

*N.J.S.A.* 39:6A–4 requires every automobile liability policy to provide PIP benefits for the "named insured and members of his family residing in his household...." In *Brokenbaugh v. N.J. Manufacturers Ins. Co.,* 158 *N.J.Super.* 424 (App.Div. 1978), we held that the term "family" includes a domestic circle consisting of the insured, the woman he lives with but to whom

he is not married, and the woman's child whom he has not fathered. We reasoned that

> * * * there appears to be no logical reason why "family" should be limited to blood relations. It would appear that all the policy factors which prompted the use of the term in the reform Act apply as well where, as here, the parties live in a domestic circle and recognize reciprocal duties of care and support. [158 *N.J.Super.* at 433]

In *Brokenbaugh,* the child's natural father had abandoned her and had never provided for her support. Support was provided by the insured. The question raised by this appeal is whether a child who is a member of such a domestic circle loses his PIP status as a member of the insured's family because of his continuing parental relationship with his noncustodial parent, including support payments by that parent. We conclude that he does not.

The infant plaintiff Nathan James was born in 1974, one of three children of the marriage of Ansely James and Lendia Robertson. In 1978 Lendia Robertson and her three children moved in with Bernie Addison, the insured here, and his two children, forming a domestic circle which has endured since that time. Lendia Robertson and Ansely James were divorced in 1979 by a judgment requiring him to pay $180 a month for the three children but no alimony. He has complied with this order and has regularly exercised his visitation rights. Robertson and Addison have not married.

In May 1982, Nathan James, then 8 years old, was struck by an automobile operated by Elizabeth J. Corpening and insured by defendant Allstate Insurance Company. Addison, with whom Nathan was then residing, owned an automobile insured by defendant State Farm Mutual Automobile Insurance Company. Allstate refused to pay PIP benefits, contending that Nathan was entitled to benefits under Addison's policy. State Farm refused to pay benefits, contending that Nathan, although residing in Addison's household, was not a member of Addison's family. This action against both carriers ensued.

State Farm moved for summary judgment dismissing both the complaint as to it and Allstate's cross-claim. The motions

were granted and judgment accordingly entered against All-
state to provide the PIP benefits. In support of its motion,
State Farm relied on the affidavit of its insured, Addison, in
which he averred that although Nathan and his mother resided
with him, he was not related by blood or marriage to either and
"did not, and * * * [does] not, support Nathan James in any
manner." Allstate responded with Lendia Robertson's affida-
vit, which in pertinent part recited as follows:

* * * 6. In 1977 I met Bernie Addison through my mother. In June 1978, my
three children and I began to live with Bernie and his two sons, Vernard, now
age 15 and Alvin, now age 13.

7. Bernie is an important figure in our household. He pays the rent and
utilities every month. He purchases food for the entire family and does so on a
regular basis. Since I work until 8:00 p.m. at night, Bernie watches over the
children from the time they come home from school until I arrive home from
work at 8:00 p.m. Bernie works in construction and many times he will work at
odd times or irregular shifts, permitting him to be home during the day. Bernie
treats all the children in the household as his own, he will discipline them and
buy them gifts on their birthdays and at Christmas. In the past he has taken
all the children, mine and his, fishing, camping, hiking, to a ball game, to a
movie or out to dinner.

8. Ansely, Nathan and Lendia know Bernie is not their father. Their father,
Ansely James, visits them on a regular basis and has never missed a child
support payment. Despite this Bernie is much more than a friend of mine.
The children look up to him, respect him and turn to him for care and guidance.
I have even heard them at times refer to Bernie as "Daddy."

The trial judge granted State Farm's motion for summary
judgment on the sole ground that our decision in *Brokenbaugh*
did not apply because "the plaintiff knows that Addison is not
his father. The real father pays child support on a regular
basis and visits the children regularly."

■ We reverse because we are satisfied that the trial judge
applied an essentially irrelevant standard in determining wheth-
er the infant plaintiff was a member of the insured's family
within the intendment of *N.J.S.A.* 39:6A–4. In our view, the
payment of a support contribution by the noncustodial parent
does not automatically disqualify the child from membership in
the family of the adult to whom the custodial parent is married
or with whom she lives.

■ For purposes of the statute, plaintiff's relationship to Addison is the same as it would have been had Addison and his mother married. Thus, if a stepchild residing with the insured is a member of the insured's family, then a child who is a *de facto* stepchild should also be so regarded if all of the customary attributes and characteristics of the stepparental relationship are present.

■ We have no doubt that despite the absence of a blood or marital relationship between stepparent and stepchild, the stepchild is a member of the stepparent's family within the intendment of the statute if they reside together. Indeed, in *Brokenbaugh*, we noted that "stepchildren are routinely found to be 'members of the family' for insurance purposes." 158 *N.J.Super.* at 432. That proposition is a reflection of the nature of family dynamics which we have recognized in other contexts. Thus, as we said in *Helentjaris v. Sudano*, 194 *N.J.Super.* 220, 229 (App.Div.1984), "it must be recognized that after a divorce the child of the marriage becomes a member of two separate families, the mother's and the father's." And the Supreme Court has accepted the psychological truth that after the divorce the child has an increased emotional dependence on the custodial parent. *Cooper v. Cooper*, 99 *N.J.* 42 (1984). That dependence clearly occurs in the context of the custodial parent's living arrangements.

Obviously then, when the custodial parent marries there is a new family unit to which the child belongs, that of the custodial parent and her spouse. That unit is no less a family because the noncustodial parent makes a financial contribution for the support of the child. Typically, that contribution is not the exclusive support the child receives, and to the extent the custodial parent provides financial support, her spouse is immediately involved in the financial well-being of the child even if he makes no specific financial contribution of his own. The simple fact is that the financial interdependence of the adults in the family unit creates financial consequences and financial

relationships among all the members of that unit. Our predicates in *Brokenbaugh,* namely, reciprocal duties of care and support, are typically present in the family unit which includes a stepchild. The presence of these reciprocal duties in turn invokes the policy of PIP legislation, which is to spare the whole family unit the burdens which fall on all of its members when one of them is injured. We further note that since that statute requires not only family membership but also residence in the insured's household, the insured's stepchild who resides with him is not likely to qualify for benefits under the automobile insurance coverage of the noncustodial parent. The remedial intentions of the PIP legislation are therefore subject to defeat if that child is not regarded as a member of the family of the custodial parent's spouse.

Just as we recognized the reality of relational dynamics in *Brokenbaugh,* so do we here in holding that a *de facto* stepchild is entitled to the same protection as a *de jure* one.[1] The question then is only whether that family relationship did in fact exist here. The mother's affidavit clearly so portrays the relationship. The child's father, by paying $15 a week for his support, has obviously not assumed the exclusive financial support just as he no longer contributes the exclusive paternal or paternal-like nurturing. The denial by Addison of a direct financial contribution is overly simplistic. The child's mother works and so does Addison, and there is certainly a presumption raised by the mother's affidavit of a pooling of resources. It is he who pays the rent and buys the food for the entire family unit. She undoubtedly makes other financial contributions for the benefit of all.

We recognize, however, that Addison's affidavit raises a factual issue which must be resolved. We therefore remand to

---

[1] We point out that recognition of the status of the *de facto* family is a cornerstone of the Family Part concept. *See R.* 5:1–2(a) which allocates to the court all actions arising not only out of a family relationship but also out of a "family-type" relationship.

the trial court for further proceedings to determine whether the financial arrangements between Robertson and Addison involve their financial interdependence and the consequent interdependence, to an appreciable degree, of all of the children in the unit upon both. If there is both an element of financial support and an element of nurturing in the relationship between the child and Addison, then the child must be regarded as a member of Addison's family for PIP coverage purposes.

Finally we reject Allstate's contention that our holding in *Brokenbaugh* has been in any way diluted by *Wood v. State Farm Mut. Auto. Ins. Co.*, 178 *N.J.Super.* 607 (App.Div.1981), in which this court held that an adult was not a member of the family of the woman with whom he lived. Without expressing any agreement with that holding, we nevertheless point out that the situation of a dependent child is obviously distinguishable.

We reverse the summary judgments appealed from and remand for further proceedings consistent herewith. The final judgment imposing the full PIP obligation on Allstate shall continue in full force and effect until an order is entered on remand determining the respective obligations of defendants. We do not retain jurisdiction.