253 N.J. Super. 641 (1992)
602 A.2d 796
DAVID HANDLER AND ANN HANDLER, PLAINTIFFS-APPELLANTS,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1992.
Decided February 24, 1992.
*642 Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.
James LePore argued the cause for appellants.
Lisa B. Fastiggi argued the cause for respondent (Lewis & Wood, attorneys; Lisa B. Fastiggi, of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiffs, David Handler and Ann Handler, appeal from a summary judgment in their action to compel defendant, State Farm Mutual Automobile Insurance Co. (State Farm), to provide them with underinsured motorists coverage under a policy of automobile insurance issued to Charmaine Handler with limits of $100,000.
David Handler, on November 22, 1989, was a passenger in his own 1978 Cutlass Oldsmobile. The vehicle, being operated by his daughter, Jill Handler, on Route 537 in Colts Neck, New Jersey, swerved to avoid striking an animal, drove through a fence and struck a tree. David sustained severe and permanent personal injuries in this accident. At the time of the accident, David owned three passenger vehicles all insured through Electronic Data Systems, as servicing carrier for the New Jersey Automobile Full Insurance Underwriting Association, with coverage of $15,000/$30,000/$10,000.
*643 Less than two months earlier, on September 30, 1989, State Farm had issued an automobile insurance policy to Charmaine Handler, plaintiffs' former daughter-in-law. Charmaine, at that time, was residing with her three infant children at the Lincroft, New Jersey home of the plaintiffs, who were the children's paternal grandparents.
Charmaine had married Mark, plaintiffs' oldest son, on December 31, 1983. The young couple had three infant children. While Mark Handler was in the Navy, from July, 1985, to July, 1987, Charmaine lived with his parents. However, Charmaine and Mark separated in early 1988, after living at another location for several months. After the separation, Charmaine returned with the three children to live with the plaintiffs in Lincroft. She obtained a final judgment of divorce in Maryland on August 29, 1989.
In August of 1989, before the divorce was final, Charmaine became engaged to Michael Handler, plaintiffs' second oldest son, who was living at the Handler's home. They purchased an engagement ring, opened a joint checking account, and on September 30, 1989, jointly purchased a Plymouth Voyager van, the vehicle named in the State Farm policy in question. The State Farm premiums were paid by Charmaine and Michael out of their joint checking account. The vehicle was, however, titled only in Charmaine's name, and she was the only named insured on the policy.
A claim for underinsured motorist coverage presented to State Farm on behalf of plaintiffs was denied. State Farm asserted "Charmaine Handler was divorced from Mark Handler on the date of the loss, [and therefore] Ms. [Charmaine] Handler would not be considered a relative of Mr. (David) Handler." Thus, on November 22, 1989, David Handler was no longer Charmaine's relative since she was not married to Mark Handler.
*644 The State Farm policy, as it pertained to uninsured and underinsured motorist coverage stated the following in relevant part:
Who Is an Insured

Insured  means the person or persons covered by uninsured and underinsured motorist coverage. This is:
1. you;

2. your spouse;

3. your relatives; and
4. any other person while occupying:

a. your car, a temporary substitute car, a newly acquired car or a trailer attached to such car. Such vehicle has to be used with the consent of you or your spouse; or
b. a car not owned by you, your spouse, or any relative, or a trailer attached to such a car.

The car has to be driven by the first person named in the declarations or that person's spouse and with the owner's consent.
....
5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above. [Emphasis in original].
Further, the contract sets forth the following definition:

Relative  means a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school. [Emphasis in original].
Plaintiffs argue that the New Jersey Automobile Reparation Reform Act (No-Fault Act), N.J.S.A. 39:6A-1 to -35, and the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 (Act of 1984), N.J.S.A. 17:28-1 to -7, requiring the option of underinsured motorist coverage, should be construed in pari materia due to their common purpose. 2B Norman J. Singer, Sutherland Statutory Construction § 51.03 at 138 (5th ed. 1992); see State Farm Mut. Auto. Ins. Co. v. Pizzi, 208 N.J. Super. 152, 155, 505 A.2d 160 (App.Div. 1986) ("PIP [personal injury protection] and UM [uninsured and underinsured motorist] terms have been construed as in pari materia"). Accord Matland v. United Servs. Auto. Ass'n, 174 N.J. Super. 499, 511, 417 A.2d 46 (Law Div. 1980). They further urge, "it is apparent that PIP and UM coverage were *645 both part of one `insurance package' aimed at providing the broadest protection for all persons injured in accidents occurring in New Jersey. As such, the statutes providing such coverage are in pari materia." Brokenbaugh v. New Jersey Mfrs. Ins. Co., 158 N.J. Super. 424, 434, 386 A.2d 433 (App.Div. 1978).
The Act of 1984 provides in relevant part:
17:28-1.1. Automobile liability policy for bodily injury or death; amount of coverage; uninsured and underinsured motorist coverage
....
b. Uninsured and underinsured motorist coverage shall be provided as an option by an insurer to the named insured up to at least the following limits: $250,000.00 each person and $500,000.00 each accident for bodily injury; $100,000.00 each accident for property damage or $500,000.00 single limit, subject to an exclusion of the first $500.00 of such damage to property for each accident, except that the limits for uninsured and underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively.
The No-Fault Act provides in pertinent part:
39:6A-4. Personal injury protection coverage, regardless of fault
Every automobile liability insurance policy, issued or renewed on or after January 1, 1991, insuring an automobile as defined in section 2 of P.L. 1972, c. 70 (C. 39:6A-2) against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide personal injury protection coverage, as defined hereinbelow, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, .... [Emphasis supplied].
Plaintiffs point out that the words "the named insured and members of his family residing in his household" were used by the Legislature to identify those who should be provided with PIP benefits. They urge that the more "restrictive word `relatives'" as employed by State Farm in defining its coverage for *646 the underinsured motorist coverage was improper and ineffective.
It is clear that the purpose of uninsured and underinsured motorist coverage is to make available insurance protection for accident victims where the tortfeasor did not have adequate insurance coverage. We have liberally construed this coverage to effectuate a broad range of protection to accident victims. Motor Club of Am. Ins. Co. v. Phillips, 66 N.J. 277, 293, 330 A.2d 360 (1974). Terms of an automobile insurance policy must also satisfy the minimum requirements of statutes which set forth compulsory standards for insurance coverage. See Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373-74, 225 A.2d 570 (1966).
N.J.S.A. 17:28-1.1, the Act of 1984, uses neither the term "family" nor "relative." Although the word "family" is used in N.J.S.A. 39:6A-4, the No-Fault Act, it is not specifically defined. The term "family" has, however, generally been granted a wider definition than the term "relative." Brokenbaugh, 158 N.J. Super. at 431-33, 386 A.2d 433.
We recognize that State Farm's utilization of the term "relative" and its definition of "relative" under its policy is narrower than the definition of "family" articulated by this court. See James by Robertson v. Allstate Ins. Co., 201 N.J. Super. 299, 305-06, 493 A.2d 28 (App.Div. 1985); Brokenbaugh, 158 N.J. Super. at 433, 386 A.2d 433. The Legislature, however, has not mandated that underinsured-motorist coverage be provided for "family" members, nor has it indicated an intent that underinsured motorist coverage be co-extensive with personal injury protection coverage. The Commissioner of Insurance has seen fit to approve the language of the State Farm policy, and we have no warrant to amend it. We have no basis upon which to ignore the plain and clear language of the insurance contract that clearly defines "relative." See Linden Motor Freight Co. v. Travelers Ins. Co., 40 N.J. 511, 524-25, 193 A.2d 217 (1963) (clear terms of an insurance contract may not be disregarded *647 by judiciary to rewrite the contract for the parties); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960) (when terms of an insurance contract are clear, the function of the court is to enforce the contract as written and not to make a better contract for either party). Further, it has not been demonstrated that there was any past practice by insurers of providing uninsured and underinsured coverage for "family" members rather than relatives of the named insured when the Legislature mandated that such coverage be provided as an option to all persons obtaining automobile liability insurance.
David Handler chose to purchase the minimum coverage for underinsured motorist injuries under his own policy. We find no persuasive reason why he should be permitted to compel additional coverage where he is not included in the definition of "relative" provided in an insurance contract to which he was not a party, and where he was not within the class included in the cost of the policy as written.
Further, we are convinced that any assertion of coverage based upon the relationship between Charmaine and Michael Handler, her fiance, or a resultant de facto father-in-law  daughter-in-law status between Charmaine and David is governed by our holdings in Pizzi, 208 N.J. Super. at 156, 505 A.2d 160, and Wood v. State Farm Mut. Auto. Ins. Co., 178 N.J. Super. 607, 609, 429 A.2d 1082 (App.Div. 1981). Both cases hold that people who live together, while not married, will not be deemed to be family or relatives for insurance coverage purposes "no matter how close and intimate that friendship might be." Wood, 178 N.J. Super. at 609, 429 A.2d 1082; Pizzi, 208 N.J. Super. at 155-56, 505 A.2d 160.
Lastly, plaintiffs' argument that David Handler must be afforded coverage since David's son, Michael Handler, was an equitable owner of the vehicle insured by State Farm was not raised in the Law Division and is clearly without merit. R. 2:11-3(e)(1)(E).
Affirmed.